465 So.2d 811 (1985)
STATE of Louisiana, Appellee,
v.
Otis Lee MURPHY, Appellant.
No. 16710-KA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1985.
*813 Coenen, Berry & Bruyninckx by James W. Berry, Rayville, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Lowell B. Loftin, Dist. Atty., William R. Coenen, Jr., Asst. Dist. Atty., Rayville, for appellee.
Before JASPER E. JONES and FRED W. JONES, Jr., JJ., and PRICE, J. Pro Tem.
PRICE, Judge Pro Tem.
The defendant, Otis Lee Murphy, appeals his conviction of attempted manslaughter, LSA-R.S. 14:27, 14:31. The trial court sentenced the defendant to serve ten years at hard labor. On February 23, 1983, the Louisiana Supreme Court directed the trial court to grant the defendant an out of time appeal. Finding no merit to defendant's assignments of error on appeal, we affirm.

FACTS
Approximately three months prior to the present incident, Stephanie Handy, and her child moved into the home of the defendant located on Spruce Street in Rayville, Louisiana. On December 25, 1980, the defendant and Stephanie had an argument concerning defendant's drinking. Stephanie testified that she told the defendant that he should not be drinking and knocked the defendant's cup of gin out of his hand. As the argument continued, Stephanie grabbed a hammer and laid it on a bed. The defendant then threw the hammer behind the bed. Afterwards, the defendant walked to a front bedroom of the house and obtained a rifle. The defendant walked through the house and entered, from the kitchen, the bedroom in which Stephanie was located. As the defendant entered the room with the gun, Stephanie began to approach the defendant when the defendant fired two shots, wounding Stephanie on the right side of her chest and the right side of her face.
The defendant then ran next door to his mother's home and asked her to call the police; however, she refused to do so. The defendant ran back to his house and found Stephanie lying on the floor and still conscious.
Being unable to get his mother to call the police, the defendant again returned to his mother's house and called the Rayville Police Department himself. The defendant then ran back to his house.
As Officers Jesselink and Boone entered the defendant's home, they observed the defendant kneeling over Stephanie on the kitchen floor. The officers observed the defendant wiping blood from the floor and from Stephanie's wounds. They also observed two rifle shells laying on the floor.
At that point, the officers summoned an ambulance and attempted to aid Stephanie until the ambulance arrived.
As the ambulance attendants were removing Stephanie, Officer Jesselink asked him where the gun was located, and the defendant informed the officer that the gun was in the back bedroom of the house. The officer then asked the defendant to go with him to get the gun, and he and the defendant walked to the back bedroom, approximately two rooms from where they were located, to find the gun. In the back room, the defendant gave Officer Jesselink a 22-caliber rifle. The defendant was then placed under arrest.
The defendant was originally charged with attempted second degree murder; however, the jury found the defendant guilty of the responsive verdict of attempted manslaughter. On appeal, the defendant filed the following assignments of error:
1. The trial court erred in denying defendant's motion for mistrial on the *814 grounds that a juror did not meet the requirements of law.
2. The court erred in failing to suppress the confession or inculpatory statement of the defendant as having been taken in violation of defendant's constitutional rights.
3. The court erred in failing to suppress evidence seized from defendant and used at trial as being taken in violation of defendant's constitutional rights.
4. The court erred in failing to excuse a juror for cause who stated that she could not be a fair and impartial juror.
5. The court erred in failing to grant a new trial to defendant because the verdict was not responsive to the indictment.
6. The court erred in imposing upon defendant a sentence which was excessive under the circumstance.

ASSIGNMENT OF ERROR NO. 1
By this assignment, the defendant contends that the trial court erred in refusing to grant defendant's mistrial motion on the grounds that a juror was seated in his trial who could not read and write the English language.
The record reflects that after the jury retired for deliberation, the foreman of the jury informed the court that he had discovered that a juror could not sign her name. Additionally, the foreman told the judge that the juror informed him that she could not read or write. The defendant then moved for a mistrial. However, the court found that this fact was not prejudicial either to the state or the defendant. Thus, the court overruled the defendant's motion for a mistrial.
Defendant contends that he was entitled to his motion for mistrial under LSA-C. Cr.P. Art. 775(3). LSA-C.Cr.P. Art. 775(3) provides that a mistrial may be ordered in a jury trial when there is a legal defect in the proceedings which would make any judgment entered upon a verdict reversable as a matter of law. Defendant contends that the judgment is reversable as a matter of law due to the fact that a juror was not qualified under LSA-C.Cr.P. Art. 401(3).
Under LSA-C.Cr.P. Art. 401(3), in order to qualify as a juror a person must be able to read, write, and speak the English language.
This issue has once before been faced by the Louisiana Supreme Court in State v. Nicholas, 312 So.2d 856 (La.1975). In Nicholas, the defendant maintained that the trial court erred in refusing to grant a mistrial after the foreman of the jury announced during deliberations that two jurors were unable to read and write. The court found that the jurisprudence interpreting Art. 775 makes it clear that mistrial is a drastic remedy and that it is only authorized in specified instances where unnecessary prejudice results to the accused. The court found no abuse of the trial court's discretion in view of the fact that the only written exhibits in the trial had been read aloud to the jurors and that literacy or the lack of it was not of such a significance in the case as to warrant the drastic remedy of a mistrial.
In the present case, the only written exhibit, the defendant's statement given to Officer Boone, was read aloud to the jury. This statement simply reiterated facts which were corroborated by the testimony of other witnesses. Therefore, it is apparent that the ability to read and write was not of great importance in the defendant's trial. We find no abuse of the trial court's discretion.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
By this assignment, the defendant contends that the trial court erred in failing to suppress defendant's confession.
The record reflects that after defendant's arrest at his home, he was taken to the Richland Parish Sheriff's Office. The defendant was placed in an empty office where he waited for approximately one hour while the arresting officers were *815 working on unrelated business. Before asking the defendant to make a statement, the officers advised the defendant of his constitutional rights. Additionally, the defendant signed a card acknowledging that he had been read his constitutional rights and that he understood those rights. The defendant then signed a waiver of his constitutional rights.
Before the State may introduce a confession into evidence, it must be affirmatively shown that it was freely and voluntarily given and not made under influence of fear, duress, menaces, threats, inducements, or promises. LSA-R.S. 15:451; State v. Benoit, 440 So.2d 129 (La.1983); State v. Broadway, 440 So.2d 828 (La.App. 2d Cir.1983).
The record in the present case does not reflect that the defendant was threatened, coerced, or offered any inducements into giving a statement. The record reflects that the defendant was given his constitutional rights and that he had in fact waived those rights. The record also reflects that the defendant's statement was freely and voluntarily given after a knowing and intelligent waiver of his constitutional rights. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment, defendant contends that the trial court erred in failing to suppress evidence seized from the home of the defendant. Specifically, the defendant contends that the .22 caliber rifle recovered from the back room of defendant's home violated defendant's constitutional right to be free from unreasonable searches and seizures without a warrant.
The record reflects that the defendant called the police to his home to investigate a shooting of his girlfriend, Stephanie Handy. When the officers arrived at defendant's home, they entered the home and found the defendant kneeling on the floor over Stephanie Handy's body in the kitchen of the house. As ambulance attendants removed Stephanie, an officer asked the defendant where the weapon used in the shooting was located. The defendant responded that the rifle was in the back room of his house. Pursuant to a request by the officer, the defendant and the officer went to the back room of the house approximately three bedrooms away from the kitchen, and retrieved the rifle.
The fourth amendment to the United States Constitution and Article 1, Section 5 of the Louisiana Constitution protects persons from unreasonable searches and seizures. Except in certain, narrowly defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant. Camara v. Municiple Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); State v. Ludwig, 423 So.2d 1073 (La.1982).
One carefully defined exception to the warrant requirement which is recognized throughout the United States is the so called "emergency exception". Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). Under the emergency exception, police officers may enter a dwelling without a warrant to render emergency assistance to a person reasonably believed to be in distress and in need of such assistance. When the police come upon the scene of a crime they may make a prompt, warrantless search of the area to see if there are other victims or if a killer is still on the premises. Mincey v. Arizona, supra. A warrantless search must be strictly circumscribed by the exigencies which justify its initiation. Mincey v. Arizona, supra; State v. White, 399 So.2d 172 (La.1981).
The circumstances of the present case justify the officers' entry into the home of the defendant. The facts of the present case reflect that an injured, bleeding individual was present in the kitchen of the house and was in need of emergency aid. Therefore, any evidence observed and seized in the kitchen by the officers was valid as an emergency exception to the warrant requirement.
*816 However, as the victim was being removed, the officers asked the defendant the location of the weapon. At that point, the victim was not in need of further emergency aid by the officers and the officers were aware that it was the defendant who had shot the victim.
Therefore, the officers' further search of the house and the seizure of the rifle in the back bedroom may only be valid if the State has shown that this entry fell into an exception to the warrant requirement.
A consent search is a recognized exception to both the warrant and probable cause requirement. State v. Ludwig, supra; State v. Johnson, 380 So.2d 32 (La. 1980). When asserting that a search was made with consent, the state has the burden of proving that the consent was freely and voluntarily given, as shown by the facts and circumstances of the individual case. State v. Robinson, 386 So.2d 1374 (La.1980).
The United States Supreme Court has held that the test for voluntariness of a consent to search is a totality of the circumstances test. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Thus, courts must examine all the surrounding circumstances to determine whether the consent was indeed voluntary. The fact that an accused has been using alcohol does not render a consent involuntary, while it certainly is a relevant factor in the determination. State v. Ludwig, supra.
In the present case, the facts reflect that the defendant voluntarily directed the police officers to the location of the gun in the back room. The defendant had told the officers that the shooting was an accident. Although the record reflects that the defendant had been drinking, the officers stated that the defendant did not appear to be intoxicated. We find that the circumstances of the present case indicate that the defendant freely and voluntarily consented to the search and seizure of the rifle by the police officers.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
By this assignment, the defendant contends that the trial court erred in failing to excuse juror Stela Ware for cause.
The record reflects that Ware was an employee of the town of Rayville. The juror indicated on voir dire that she had come across information from one of the officers involved in the investigation of this crime which would influence her opinion as to the guilt or innocence of the defendant. The court asked the juror if she could start the trial with the accused being totally and completely innocent and continue him wrapped in a cloak of innocence until such time that the state proves his guilt beyond a reasonable doubt. The juror responded in the affirmative, then the trial court denied defendant's challenge for cause of this juror.
The trial court is invested with broad discretion in ruling on a challenge for cause, which ruling will not be disturbed on appeal absence a showing of abuse. State v. Monroe, 366 So.2d 1345 (La.1978); State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984).
A trial court's refusal to excuse a prospective juror for cause is not an abuse of his discretion notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Governor, 331 So.2d 443 (La.1976); State v. Nix, 327 So.2d 301 (La.1976).
The juror in the present case indicated to the court that she could listen to the evidence and form an opinion based upon the evidence and not find the defendant guilty unless the State proves his guilt beyond a reasonable doubt. The court was apparently satisfied that the juror could render an impartial verdict according to the law and evidence, despite her initial indication to the contrary. We find no showing *817 that the trial court abused its discretion in determining that the prospective juror could be impartial.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5
By this assignment, the defendant contends that the trial court erred in finding that the jury's verdict of attempted manslaughter was responsive to the charge of attempted second degree murder. However, the defendant has not argued or briefed this assignment of error. Therefore, this assignment of error is deemed abandoned. State v. Foy, 439 So.2d 433 (La.1983).

ASSIGNMENT OF ERROR NO. 6
By this assignment, the defendant contends that the court erred in imposing an excessive sentence upon the defendant. The defendant was convicted of attempted manslaughter under LSA-R.S. 14:27, 14:31; therefore, the maximum possible sentence the defendant could have received was ten and one-half years at hard labor. The defendant was sentenced to serve ten years at hard labor.
The defendant contends that the trial court failed to consider the sentencing guidelines in the LSA-C.Cr.P Art. 894.1. In sentencing the defendant, the court focused on the seriousness of the offense as his primary reason for the sentence imposed.
The sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983), State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983).
While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record should reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983). The trial court's failure to adequately comply with Art. 894.1 does not, in and of itself, render a sentence invalid or warrant remand for resentencing. The sentence will be upheld if the record clearly illumines and supports the sentencing choice. State v. Smith, 430 So.2d 31 (La.1983); State v. Griffin, 455 So.2d 681 (La.App. 2d Cir.1984).
It is apparent that the trial court failed to comply with Art. 894.1 by articulating sufficient aggravating and mitigating circumstances. However, we find that the record supports the trial court's sentencing choice. The record reflects that the defendant shot Stephanie Handy in the chest and in the face after only minor provocation; a doctor who attended Ms. Handy testified that her wounds were life-threatening; and the defendant had a prior conviction for robbery and had been previously charged with theft on three different occasions.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.