SEXTON, Judge.
The defendant, Donells Cann, was convicted by a jury of the crime of distribution of marijuana and sentenced to five years at hard labor. He now appeals arguing four assigned errors. Finding no merit in any of these contentions, we affirm the conviction.
Because defendant’s Assignment of Error Number Three challenges the sufficiency of evidence under the standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and since the evidence in this case is primarily circumstantial, we find it necessary to discuss the facts in some detail.
FACTS
On September 11, 1983, appellant was operating a motorcycle on South Grand Street in the city of Monroe. Appellant passed another vehicle while in a no passing zone and was stopped by a deputy sheriff. The deputy issued a citation and ordered appellant to leave the motorcycle parked and get someone else to drive it away as appellant did not have a driver’s license on his person. Then, the deputy left.
As appellant was walking away from the motorcycle, Shane Frey, age ten at the time, told appellant that he would “watch his motorcycle for him.” Appellant returned to Shane and offered him $10 to take a set of saddlebags off of the motorcycle and take them to appellant at a place Shane described as being in back of a nearby apartment project.
Shane Frey lives in The Johnny Robinson Youth Fellowship Boys’ Home located across the street from where appellant was stopped. The apartment project where Shane and appellant were to meet is located next to the Boys’ Home.
*1265 Once appellant left, Shane took the saddlebags and the $10 and started for the apartments. Knowing that the apartment project was off-limits to him, however, the boy instead took the money and saddlebags to Johnny Robinson, administrator of the Boys’ Home and guardian of Shane. After having Shane’s story related to him, Mr. Robinson opened the bags and found in each side thereof what later proved to be a one-half pound package of marijuana, or one pound in all. Immediately, Mr. Robinson called the police.
Before the police arrived, Mr. Robinson observed appellant riding a bicycle from the apartments to the Boys’ Home. Mr. Robinson said that appellant stopped about 30 feet away and demanded that Robinson give him the saddlebags. Mr. Robinson refused and told appellant that he was giving the saddlebags to the police. Appellant threatened to beat up Mr. Robinson and left. Shortly thereafter, appellant returned and threatened to burn down the Boys’ Home if he did not get the saddlebags back. Appellant left and Sergeant John Pipes of the Monroe Police Department arrived.
Upon arrival, Sergeant Pipes obtained the saddlebags and the $10 from Mr. Robinson. Sergeant Pipes looked into the saddlebags and confirmed that it contained a substance appearing to be marijuana in clear plastic bags. Sergeant Pipes did not have a search warrant.
After further investigation, the police determined that the motorcycle was registered in the name of Gregory Keller. Mr. Keller had purchased the motorcycle for Freddie Cann, appellant’s brother, because Freddie Cann’s credit rating was bad. Freddie Cann kept the motorcycle and paid the notes. Mr. Keller testified that he never knew appellant to ride the motorcycle and that the saddlebags were always on the motorcycle and belonged to Freddie Cann. The police informed Mr. Keller that they would release the motorcycle once appellant came to the police station.
After turning himself in and receiving Miranda warnings, the appellant spoke to the officers briefly before asking for an attorney. During that time, appellant confirmed that he gave Shane $10 to watch the motorcycle.
Appellant testified that he drove his sports car in the company of his girlfriend to the family grocery located at 908 Bethune Street. His brother, Freddie Cann, was operating the store at that time. Appellant stated that he had never ridden the motorcycle before the day in question. He testified that the saddlebags at issue were on the motorcycle when he got on it. He also stated that his brother had gotten them from his cousin who had obtained them “in California.”
He further testified that he rode the motorcycle and then was proceeding to his girlfriend’s house which was near the previously mentioned apartment project. It is apparent from appellant’s testimony that his brother was to drive defendant’s girlfriend in the sports car to another residence in that immediate neighborhood and that he and his brother were to swap vehicles in that area.
Appellant stated that he never opened or put anything in the saddlebags. Mr. Keller, who was at the store when appellant arrived, corroborated appellant’s testimony that appellant did not handle or open or otherwise look into the saddlebag when he mounted the motorcycle and drove away.
As we appreciate the import of appellant’s testimony, it is that after arriving at his girlfriend’s house on foot, he borrowed a bicycle and proceeded to attempt to locate his brother. The next event is unclear from the record but the defendant obviously arrived at the Boys’ Home shortly after mounting the bicycle.
Appellant admitted he paid the boy $10 to watch the motorcycle (that was the smallest denomination bill he had), but denied telling the boy to do anything with the saddlebags on the parked motorcycle. The appellant further admitted telling Mr. Robinson that he would burn the house down, but claimed he did so only because Mr. Robinson took the saddlebags from his *1266 brother’s motorcycle and he, appellant, felt responsible. Appellant explained that he threatened Mr. Robinson because he thought that the boy had wrongly taken the saddlebags from the motorcycle he had paid the boy to watch. Appellant denied that Mr. Robinson told him about marijuana being in the bag or about the telephone call to the police.
Appellant also admitted at trial that he had previously been convicted of possession of marijuana, driving while intoxicated, and second degree felony possession of marijuana in Texas.
We resolve all conflicts in the testimony in the light most favorable to the state. Jackson v. Virginia, supra.
ASSIGNMENTS OF ERROR NUMBERS 1 and 2
The appellant assigns as his first error the district court’s denial of his motion to suppress physical evidence. We find that the trial court did not err in denying defendant’s motion to suppress. State v. Gentry, 462 So.2d 624 (La.1985); State v. Coleman, 466 So.2d 68 (La.App. 2d Cir.1985), writ denied 467 So.2d 542 (La.1985); State v. McCabe, 383 So.2d 380 (La.1980); State v. Hutchinson, 349 So.2d 1252 (La.1977).
In his second assignment of error, appellant complains that the trial court erred in admitting the state’s Exhibits 1-5 due to a break in the chain of custody. We find the trial court did not err in admitting the state’s Exhibits 1-5. State v. Sam, 412 So.2d 1082 (La.1982), appeal after remand 478 So.2d 769 (La.App. 3d Cir.1985); State v. Gordy, 380 So.2d 1347 (La.1980). Defendant did not object to the introduction of the Miranda rights waiver form. LSA-C. Cr.P. Art. 841.
ASSIGNMENT OF ERROR NUMBER 3
Appellant’s third assignment of error is that the state’s case was based on circumstantial evidence insufficient to convict him of possession of marijuana with intent to distribute. However, appellant was not charged with this crime, convicted of this crime or subject to it as a responsive verdict. Appellant was charged with and convicted of distribution of marijuana. Hence, appellant’s argument will be considered as an argument that insufficient evidence was presented to convict him of distribution of marijuana based on Jackson v. Virginia, supra.
In State v. McGuffey, 486 So.2d 1101, 1108 (La.App. 2d Cir.1986), this court, citing State v. McFadden, 476 So.2d 413 (La.App. 2d Cir.1985), writ denied 480 So.2d 739 (La.1986), reiterated the proper appellate review standard for a sufficiency of evidence claim involving circumstantial evidence.
Circumstantial evidence is not inherently less reliable than direct evidence. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954); CCrP Art. 798(3); State v. Chism, 436 So.2d 464 (La.1983). Any man would accept dog tracks in the mud against the sworn testimony of a hundred eyewitnesses that no dog passed by. The gist and the key to circumstantial evidence is the inference or process of reasoning by which the conclusion is reached. Chism, supra, at p. 469.
LRS 15:438 is an evidentiary guide for the jury and a tool or methodology for the reviewing court to employ in determining whether the rational juror in the Jackson v. Virginia constitutional due process test might have concluded that defendant’s alternative hypothesis of innocence is sufficiently treasonable to conclude that the evidence proved guilt beyond a reasonable doubt. State v. Chism, supra; State v. Wright, 445 So.2d 1198 (La.1984); State v. Captville, 448 So.2d 676 (La.1984).
The test, whether expressed in terms of doubt or of hypothesis, is the reasonableness of the ultimate conclusion on the facts and inferences which may be drawn from those facts in the particular case. Compare State v. Shapiro, 431 So.2d 372 (La.1982), and State v. Rault, 445 So.2d 1203 (La.1984). In some cases, “the defendant’s circumstantial theory [or hypothesis] is [found to be] remote *1267 [or unreasonable] ...” when it is compared “... with the prosecution’s hypothesis of defendant’s guilt, which is consistent overall with the evidence.” State v. Graham, 422 So.2d 123, 130 (La.1982). [footnote omitted]
The crime of distribution is simply the knowing or intentional distribution of a controlled dangerous substance. LSA-R.S. 40:966(A)(1). “Distribution” is properly defined as “delivery” or “physical transfer.” LSA-R.S. 40:961(13), (9). In addition to delivery, the state must show that the defendant must have known or had “guilty knowledge” of the bag’s contents when he transferred it. State v. Kreller, 255 La. 982, 233 So.2d 906 (1970); State v. Knight, 298 So.2d 726 (La.1974). The mental state must be shown to have actuated the proscribed criminal conduct (delivery). Knowledge acquired after the transfer will not satisfy the state’s burden. See La Fave & Scott, Criminal Law, §§ 24 and 34 (1972).
Thus, the key issue for our consideration is whether the State’s evidence, viewed in the light most favorable to the prosecution, shows that the defendant, Do-nells Cann, knowingly gave the marijuana to the child, thereby excluding every reasonable hypothesis of innocence.
In summary, the evidence shows that the defendant left his brother’s establishment on a motorcycle containing $1,000 worth of marijuana (or he picked the marijuana up at his house where he says he stopped before he proceeded to his girlfriend’s house). He gave an unknown, young boy $10 to take the saddlebags from the motorcycle to a place in the vicinity of an area defendant was also going on foot. He hurried back to the area where the motorcycle was left and went directly to the Boys’ Home. There he became abusive and demanded return of the saddlebags. He even threatened to burn down the Boys’ Home. He then left and returned again and repeated the same conduct. It is important to note that the trial record does not disclose that Mr. Robinson told the defendant that the saddlebags contained marijuana. He simply testified that he told the defendant that he had just called the police. On the witness stand, the defendant denied that he told the young boy to take the saddlebags from the motorcycle and that he tried to obtain the bags back from Mr. Robinson.
The appellant testified that he had twice previously been convicted of possession of marijuana. The record reveals that his brother recently had also been convicted of a controlled dangerous substance offense and was in the state penitentiary at the time of this trial. See State v. (Freddie) Cann, 460 So.2d 1096 (La.App. 2d Cir.1984), amended and affirmed, 471 So.2d 701 (La.1985). The record also indicates that Mr. Keller was convicted of simple burglary and at least one misdemeanor which apparently was a drug related offense.
When the evidence in this case is viewed as mandated by Jackson v. Virginia, supra, that evidence reasonably indicates that the defendant had knowledge of the marijuana at the time he transferred the saddlebags to the young boy.
First of all, the value of the marijuana was $1,000. It is therefore unlikely that the defendant was on a simple joy ride on his brother’s motorcycle which contained saddlebags stuffed with a full pound of an illegal substance worth such a large sum of money.
Secondly, the defendant paid the boy $10 to take the saddlebags in the same general direction that he was going. Under these circumstances, it is illogical to have someone else carry the saddlebags, particularly a young, unknown boy.
Finally, the defendant became quite abusive in demanding the return of the saddlebags and threatened Mr. Robinson and his establishment. He returned shortly on a bicycle and was even more threatening and abusive. (The use of the bicycle indicates he was proceeding in some haste.) The defendant clearly was seeking return of the saddlebags which Mr. Robinson said the defendant could have upon the arrival of the police. We emphasize again that we could not find anywhere in Mr. Robinson’s *1268 testimony that he said he told the defendant what the saddlebags contained.
Based on the previous circumstances, when viewed in the light of defendant’s abusive and violent conduct, it is unreasonable to believe that he did not know that marijuana was contained in the saddlebags. Thus, a rational factfinder could not reasonably have believed that the defendant did not know that marijuana was in the saddlebags when he gave them to the young boy.
Only two possibilities existed with respect to the defendant’s knowledge of the marijuana when he mounted the motorcycle at the family grocery. He either knew the marijuana was in the saddlebags (irrespective of any ownership interest therein) or he did not. If he did not, his brother allowed defendant unknowingly to joy ride for the first time on a valuable vehicle — requiring skill to operate — carrying saddlebags which contained $1,000 worth of an illicit substance.
Based on the factors enunciated and the jurisprudence reviewed concerning our legal standards regarding circumstantial evidence, we determine that the hypothesis that the defendant did not know that the saddlebags contained marijuana is sufficiently unreasonable. We therefore determine that a rational jury could have found beyond a reasonable doubt that the defendant, Donells Cann, did in fact have knowledge of the marijuana when he transferred it. We affirm the appellant’s conviction of distribution of marijuana.
ASSIGNMENT OF ERROR NUMBER 4
Appellant’s last complaint is that he received an unconstitutionally excessive sentence. A violation of LSA-R.S. 40:966 carries with it a maximum penalty of ten years imprisonment at hard labor and a fine of not more than $15,000. Appellant was sentenced to serve five years at hard labor and to pay a fine of $2,000 and costs.
It is well-settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ denied 439 So.2d 1074 (La.1983).
The sentencing guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied, 435 So.2d 438 (La.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983), writ denied 438 So.2d 1112 (1983).
Appellant does not complain that the trial judge failed to follow LSA-C.Cr.P. Art. 894.1, but that, in applying the circumstances of this case, the trial judge imposed an excessive sentence.
The trial judge went to great length in articulating the sentencing factors after reviewing a pre-sentence investigation report. He noted that appellant was 30 years old and operated the family grocery after graduating from college. Also, appellant has been steadily employed.
In reviewing appellant’s criminal record, the trial court noted that appellant was a first felony offender, but only because his plea of guilty to second degree felony possession of marijuana in Livingston, Texas was for a crime committed after this offense. A complete review of appellant’s criminal record revealed: 1) a plea of guilty to possession of marijuana after being charged on July 30,1978 with possession of marijuana and cocaine and possession of marijuana with intent to distribute; 2) present offense; 3) a plea of guilty to second degree felony possession of marijuana, discussed above; 4) an October 23, 1984 *1269 conviction for DWI and resisting an officer; 5) an arrest on February 28, 1985 for possession of marijuana and negligent operation of a vehicle; 6) an April 22,1985 arrest for criminal damage to property, simple battery, carrying a concealed weapon, and using loud and profane language. (Appellant’s attorney admitted during sentencing that appellant had paid a fine on one or two of these charges.)
The trial judge stated that he considered all LSA-C.Cr.P. Art. 894.1 factors, but would mention only the more important. The trial judge found that appellant did consider the harm that could be caused by his conduct and that he acted under no strong provocation and had no grounds tending to excuse or justify his conduct. Appellant’s past and continued criminal history indicated that his conduct was not the result of circumstances unlikely to recur and indicated that appellant is a poor candidate for probation and is likely to commit another crime. Additionally, appellant’s imprisonment would work no hardship on himself or his dependants. Furthermore, threats of arson were made to Mr. Robinson. Thus, the trial judge found that appellant was in need of correctional treatment and presented an undue risk of further criminal activity if given probation or a suspended sentence. Likewise, a lesser sentence would depreciate the seriousness of the crime.
Having determined that none of the assignments of error perfected by the appellant are meritorious, the conviction and sentence of Donells Cann is affirmed.
AFFIRMED.
MARVIN, J., dissents and assigns written reasons.